**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EDWIN CREECY, | |
| Plaintiff, | |
| v. | Civil Action No. 10–841 (CKK) |
| DISTRICT OF COLUMBIA *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**
(March 31, 2011)

Plaintiff Edwin Creecy ("Creecy") brings this action against the District of Columbia, two

officers of the D.C. Metropolitan Police Department ("MPD"), and a third individual for injuries

Creecy allegedly suffered when he was arrested and subsequently prosecuted for actions that

occurred one morning in and outside a house owned by his mother in the District of Columbia.

The individual defendants are Officer Carl Jackson ("Jackson"), Officer G. Walker ("Walker"),

and William Killibrew ("Killibrew"). Defendants Walker and Killibrew have not yet entered

appearances. Creecy has filed a [18] Motion for Reissuance of Summons indicating that his

attempts to serve Walker have thus far been unsuccessful; the Court shall grant Creecy's motion

to have the summons reissued. According to the proof of service filed with the Court, Defendant

Killibrew was served on August 7, 2010. Because he has failed to respond to the Complaint, the

Court shall order Creecy to move for the entry of default as to Killibrew and, if appropriate, seek

a default judgment.

Defendant District of Columbia has timely filed a [9] Motion to Dismiss, to which Creecy

has filed an opposition, and the District of Columbia has filed a reply. The Clerk of the Court

entered default against Defendant Jackson for failure to timely respond to the Complaint.

Jackson, who is represented by the same counsel as the District of Columbia, has filed a [22]

Motion to Set Aside Default on the grounds that his name was inadvertently omitted from the

District of Columbia's motion to dismiss and he has a meritorious defense to this action. "The

court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In exercising its

discretion under Rule 55(c), the Court should consider "whether the default was willful, (2) a set-

aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Keegel v. Key West*

*& Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980). Creecy opposes Jackson's

motion only on the ground that the District of Columbia does not have standing to file motions or

plead on Jackson's behalf. However, Jackson is not required to maintain separate counsel, and

the Court accepts the Motion to Set Aside Default as appropriately authorized by Jackson.

Because Creecy has not presented any valid grounds to defeat Jackson's motion or shown that he

will be prejudiced by setting aside the default, the Court shall grant Jackson's [22] Motion to Set

Aside Default. *See also Jackson v. Beech*, 636 F.2d 831, 832 (D.C. Cir. 1980) ("[S]trong

policies favor the resolution of genuine disputes on their merits."). Accordingly, the Court shall

consider Jackson to have joined the District of Columbia's Motion to Dismiss.

In addition to opposing Defendants'[1] Motion to Dismiss, Creecy has filed a [14] Motion

for Leave to Amend Complaint. The District of Columbia has filed an opposition to that motion,

which also is presumably joined by Jackson. No reply has been filed, and the motion is now ripe

for adjudication. For the reasons explained below, the Court shall grant-in-part and deny-in-part

---

[1] For the sake of simplicity, the Court shall refer to District of Columbia and Jackson as "Defendants" when considering their Motion to Dismiss.

Defendants' Motion to Dismiss and deny without prejudice Creecy's Motion for Leave to Amend Complaint.

## I.  BACKGROUND

The following facts are drawn from allegations asserted in the Complaint, which the Court must accept as true for purposes of evaluating a motion to dismiss.

Plaintiff Edwin Creecy is a resident of Maryland who does business in the District of Columbia.  Compl. ¶ 3.  On or about May 20, 2010,[2] in the morning hours, Creecy and his mother, Sandra Peaches ("Peaches"), were at a house owned by Peaches at 1123 Michigan Avenue, NE in the District of Columbia.  *Id.* ¶ 7.  Creecy and Peaches were assisting U.S. Marshals with an eviction of a tenant from the house, a business by the name Root, Inc.  *Id.* Peaches had hired a moving crew to remove the tenant's property from the premises and onto the street, and Creecy was there to help the moving crew.  *Id.*  The U.S. Marshals were only at the residence for about an hour, and when they left, there were still several items remaining in the house.  *Id.* ¶ 8.  The moving crew had also been paid and left the premises, so Creecy continued, at his mother's request, to remove items from the premises and place them on the street.  *Id.*  As this was occurring, Creecy and Peaches noticed several bystanders rifling through the property on the street.  *Id.* ¶ 9.  Fearing that some of the more valuable items might be stolen, Peaches asked Creecy to take some of these items, such as a fax machine and copier, back into the house for safekeeping.  *Id.*

---

[2] The Court notes that this date cannot possibly be correct because it is the same day that Creecy's Complaint was filed with the Court, and Creecy later alleges that these events occurred prior to a trial on March 9, 2010.  *See* Compl. ¶ 21.  At this stage of the litigation, however, the precise date of the events in question is not relevant.

While Creecy was in the process of returning items to the house, he was approached by a man, later identified as William Killibrew. Compl. ¶ 10. Killibrew was swinging a long walking stick in the air in a threatening manner, wielding it like a weapon. *Id.* Killibrew approached Creecy and tapped him on the shoulder, telling Creecy to "get away" and not to touch "his" property. *Id.* Creecy believed that Killibrew was going to strike him with the cane. *Id.* Creecy told Killibrew to get away from him and said that if Killibrew hit him with the cane he would be forced to defend himself. *Id.* Neither Creecy nor Peaches knew who Killibrew was. *Id.* Creecy did not make any threats or do anything to put Killibrew in fear for his safety. *Id.* ¶ 11. Peaches, who was watching the events from the steps to the house, came down and told Killibrew that he was not going to "hit my son." *Id.* ¶ 12. Killibrew did not identify himself. *Id.* Peaches then told Creecy to leave the items outside and to go back inside the house to clean up and change the locks on the door. *Id.* ¶ 13. Creecy complied with his mother's instructions. *Id.* ¶ 14.

As Creecy went back into the house, Killibrew walked away and got on the phone. Compl. ¶ 13. Killibrew made a 911 call to police claiming that Creecy had assaulted him. *Id.* MPD officers Carl Jackson and G. Walker responded to the call and arrived on the scene. *Id.* The officers spoke first to Killibrew, who falsely told the officers that Creecy had attempted to assault him and that Creecy was trying to steal his property. *Id.* Killibrew also told the officers that he worked for Root, Inc. and was there on the company's behalf. *Id.* The officers then questioned Peaches and told her to open the door to the house so they could search for Creecy. *Id.* Peaches attempted to explain to the officers what had happened, but the officers ignored her and demanded that she open the door. *Id.* Peaches complained that the police did not have a warrant and that she would not give them permission to enter the house. *Id.* At this point, the

officers brushed past Peaches toward the house, nearly causing her to fall. *Id.* One of the officers went into the house, and the other remained outside blocking Peaches from entering the house. *Id.* Peaches again complained that the officers lacked a warrant, but they slammed the front door in her face. *Id.* Peaches then knocked on the front door and informed the officers that she was a lawyer and that the officers could not question Creecy without her being present. *Id.* Officer Walker yelled at Peaches to get away from the door and slammed it in her face. *Id.*

Inside the house, the officers located Creecy in the front room and proceeded to question him. Compl. ¶ 15. Creecy attempted to explain what had happened, but after a few short moments, the officers grabbed Creecy, threw him up against the wall, and told him he was under arrest. *Id.* One of the officers grabbed Creecy's right wrist behind his back and yanked it violently and hard up toward the back of Creecy's neck so that it was almost touching his head. *Id.* Creecy, who was not resisting, heard and felt a "pop," which he later learned was the sound of his shoulder being yanked and dislocated from its socket. *Id.* The officers then placed handcuffs on Creecy and locked them so tight that Creecy lost the circulation in his hands. *Id.* One of the officers realized this and recuffed him. *Id.* Creecy was in tremendous pain during this period. *Id.* Creecy claims he was cooperative and did not resist arrest. *See id.* ¶ 66.

The officers confiscated Creecy's personal possessions, including his keys to the house, which they would not turn over to Peaches so that she could lock the house. Compl. ¶ 16. When Peaches later returned to the home, she learned that the former tenant had broken into the house and stolen the new locks that had been purchased for the house. *Id.* During the transport to the police station, Creecy claims that the officers intentionally tried to cause him more pain by speeding excessively in the police car and then slamming on the breaks at each stop so that

Creecy's head would be snapped back and forth against the seat. *Id.* ¶ 17.

Once at the police station, Creecy complained about his injuries several times. Compl. ¶ 18. He declined to go to the hospital because the officers at the station told him it would delay his release. *Id.* Creecy was not transported to the central cell block until the next morning and had to spend the rest of the day and evening in the jail in severe pain. *Id.* During this time, Creecy claims he was not offered food or water. *Id.* The day after his release, Creecy went to a doctor and had x-rays taken. *Id.* ¶ 19. The following week, an orthopedic specialist diagnosed him with a separated shoulder, which he did not have before. *Id.*

Creecy alleges that Killibrew filed a false complaint claiming that Creecy threatened him and stole the property that had been evicted from the house. Compl. ¶ 21. Creecy also claims that officers Jackson and Walker failed to thoroughly investigate the case and filed a false complaint against him. *Id.* ¶ 20. Creecy was charged with theft and making threats, and he was acquitted of both charges at trial on March 9, 2010. *Id.* ¶ 21.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. 1949 (citing *Twombly*, 550 U.S. at 556).

When considering a motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged") (internal quotation omitted). However, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1950. When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.*

## III. DISCUSSION

In his Complaint, Creecy asserts eight causes of action. In Count I, he asserts a claim under 42 U.S.C. § 1983 against Defendants Jackson and Walker and the District of Columbia, alleging that they violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution by entering his home without a warrant, arresting him without a warrant

or probable cause, and using excessive force.  *See* Compl. ¶¶ 24-30.  In Count II, Creecy asserts

claims for assault and/or battery against Defendants Jackson, Walker, and Killibrew.  *Id.* ¶¶ 31-

36.  In Count III, Creecy asserts a claim for intentional infliction of emotional distress against

Defendants Jackson, Walker, and Killibrew.  *Id.* ¶¶ 37-41.  In Count IV, Creecy asserts a claim

for false arrest and/or false imprisonment against Defendants Jackson and Walker.  *Id.* ¶¶ 42-46.

In Count V, Creecy asserts a claim for malicious prosecution and/or abuse of process against

Defendants Jackson and Walker.  *Id.* ¶¶ 47-52.  In Count VI, Creecy claims that the District of

Columbia was negligent in failing to adequately train or supervise Defendants Jackson and

Walker.  *Id.* ¶¶ 53-57.  In Count VII, Creecy claims that the District of Columbia was negligent

in hiring or retaining Defendants Jackson and Walker.  *Id.* ¶¶ 58-63.  Finally, in Count VIII,

Creecy asserts a claim for negligence against Defendants Jackson and Walker.

In their Motion to Dismiss, Defendants argue that: (1) Creecy has failed to assert a claim

for municipal liability under 42 U.S.C. § 1983; (2) the facts pled in the Complaint demonstrate

that there was probable cause for the arrest; (3) the facts pled in the Complaint demonstrate that

the officers used only reasonable force; (4) Creecy has failed to plead facts showing outrageous

conduct; and (5) Creecy has failed to plead facts showing negligence distinct from the allegedly

intentional torts.  The Court shall address Defendants' arguments below in the context of each of

the legal claims Creecy assets in the Complaint.

> A.      *Claims for False Arrest and False Imprisonment*

Creecy asserts both constitutional and common law claims for false arrest and false

imprisonment[3] against Defendants Walker and Jackson. "The elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim." *Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C. Cir. 1996). For either claim, "[t]he focal point of the action is the question whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged and the action fails." *Id.* (quoting *Dellums v. Powell*, 566 F.2d 167, 175 (D.C. Cir. 1977)). "[I]t is a familiar principle that probable cause for an arrest and detention constitutes a valid defense to a claim of false arrest or imprisonment." *Magwood v. Giddings*, 672 A.2d 1083, 1086 (D.C. 1996).[4] "Probable cause exists where the arresting officer possesses information 'sufficient to warrant a prudent [person] in believing that the [suspect has] committed or [is] committing an offense." *United States v. Catlett*, 97 F.3d 565, 573 (D.C. Cir. 1996) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Probable cause is synonymous with 'fair probability,' and it is an objective standard requiring an analysis of the totality of the circumstances and the facts known to the officers at the time of the search." *United States v. Jackson*, 415 F.3d 88, 91 (D.C. Cir. 2005) (internal citations omitted). The existence of probable cause as applied to a particular set of facts is a legal question. *See Ornelas v. United States*, 517 U.S. 690, 696-97 (1996); *Pitt v. District of*

---

[3] There is "no real difference as a practical matter between false arrest and false imprisonment." *Shaw v. May Dep't Stores Co.*, 268 A.2d 607, 609 n.2 (D.C. 1970) (citations omitted).

[4] Even if a police officer lacked probable cause for an arrest, a police officer may defeat a false arrest claim by demonstrating that (1) he believed in good faith that his conduct was lawful and (2) that this belief was reasonable. *See District of Columbia v. Murphy*, 631 A.2d 34, 36-37 (D.C.), *aff'd on reh'g*, 635 A.2d 929 (D.C. 1993). However, because Creecy does not plead facts that clearly show that Defendants Jackson and Walker believed in good faith that their conduct was lawful, the Court cannot dismiss Creecy's false arrest claims on this basis.

*Columbia*, 491 F.3d 494, 502 (D.C. Cir. 2007).

Generally speaking, District of Columbia law provides that a law enforcement officer may arrest a person without a warrant only when the officer has probable cause to believe either that the person has committed a felony or that the person has committed an offense in the officer's presence. *See* D.C. Code § 23-581(a)(1)(A)-(B). In other words, the District of Columbia preserves the common-law rule that an officer is not authorized to arrest a suspect based solely on probable cause that the suspect committed a misdemeanor outside the officer's presence. *See id.* § 23-581; *Enders v. District of Columbia*, 4 A.3d 457, 467 (D.C. 2010). It is unclear whether the Fourth Amendment also contains this limitation, but the D.C. Circuit has suggested that where a constitutional claim for false arrest is asserted alongside a common-law false arrest claim based on the same allegations, it is appropriate to analyze both claims under D.C. law. *See Scott*, 101 F.3d at 754 (noting that the D.C. Circuit has not yet addressed the question of whether the common-law presence requirement for misdemeanor arrests applies to § 1983 claims and applying D.C. law to parallel claims for false arrest under § 1983 and common law).[5] Therefore, the Court shall consider whether, according to the allegations pled in the Complaint, Defendants Jackson and Walker clearly had the requisite probable cause to arrest Creecy without a warrant.

The facts pled by Creecy indicate that prior to the arrest, Defendants Jackson and Walker (1) responded to a 911 call placed by Killibrew in which he claimed that he had been assaulted; (2) arrived on the scene of the eviction with Creecy inside the house, Peaches on or near the front steps, and Killibrew's property outside; (3) heard from Killbrew in person that Creecy had tried

_____

[5] The Court notes that the parties did not address this issue in their briefs.

to assault him and steal his property; and (4) were refused permission to enter the house to question Creecy.  Based on the these facts as alleged by Creecy, it appears that Jackson and Walker had probable cause to believe that Creecy had either assaulted Killibrew or attempted to steal Killibrew's property.  Simple assault and attempted theft are misdemeanors under D.C. law. *See* D.C. Code § 22-404(a)(1) (assault); *id.* § 22-1803 (attempts to commit crime).  Although theft is a felony where the value of the property at issue is at least $1000, *see* D.C. Code § 22-3212(a), it is unclear from the allegations in the Complaint whether Creecy had already taken property back into the house before the officers arrived or whether the property was still outside the house.  Furthermore, the facts pled in the Complaint do not indicate specifically what property Killibrew accused Creecy of trying to steal or how valuable the property was.  Therefore, based on the facts as alleged by Creecy, it does not appear that Jackson and Walker had probable cause to believe that Creecy had committed felony theft or that he was attempting to steal property in their presence.  D.C. law does permit a warrantless arrest for assault in circumstances where the arresting officer has probable cause to believe that, "unless immediately arrested, the suspect may not be apprehended, may cause injury to others, or may tamper with, dispose of, or destroy evidence."  *See* D.C. Code § 23-581(a)(1)(C).  However, the facts as pled in the Complaint do not suggest that Creecy was a flight risk or likely to injure others or tamper with evidence.  The case of *Saidi v. Washington Metropolitan Area Transit Authority*, 928 F. Supp. 21 (D.D.C. 1996), cited by Defendants, is distinguishable because the officers in that case had probable cause to believe the suspect was attempting to flee the scene after committing assault.

Therefore, based on the facts pled in the Complaint, Creecy has sufficiently stated a claim

11

that his arrest was unlawful.  Accordingly, the Court shall deny Defendants' motion to dismiss

Creecy's false arrest claims.

> B.       *Claims for Malicious Prosecution/Abuse of Process*

Creecy also asserts a cause of action for malicious prosecution or abuse of process under

both common law and § 1983.  The D.C. Circuit has held that malicious prosecution is actionable

under § 1983 to the extent that the plaintiff is unreasonably "seized" without probable cause in

violation of the Fourth Amendment.  *See Pitt v. District of Columbia*, 491 F.3d 494, 511 (D.C.

Cir. 2007).  Because Creecy has properly asserted that there was no probable cause for his arrest,

he has adequately stated a claim for malicious prosecution under § 1983.

To establish a claim for malicious prosecution under D.C. law, a "plaintiff must plead and

prove four things: (1) the underlying suit terminated in plaintiff's favor; (2) malice on the part of

defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by

the plaintiff as the result of the original action.  *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C.

1980) (citing *Ammerman v. Newman*, 384 A.2d 637 (1978)).  Defendants argue that Creecy has

failed to adequately plead malice and lack of probable cause.  The Court has already concluded

that Creecy's allegations are sufficient to demonstrate lack of probable cause.  *See Saidi*, 928 F.

Supp. at 27 (D.D.C. 1996) ("There is no material distinction between reasonable grounds for

detention in false imprisonment and probable cause in malicious prosecution.").  The

determination of malice is "exclusively for the factfinder," and malice may "be established from

the existence of a willful, wanton, reckless, or oppressive disregard for the rights of the plaintiff."

*Tyler v. Cent. Charge Serv., Inc.*, 444 A.2d 965, 969 (D.C. 1982).  Here, Creecy explicitly alleges

in his Complaint that Defendants Jackson and Walker prosecuted him with ill will and malice,

12

*see* Compl. ¶¶ 50-51, and a reasonable factfinder could infer the existence of malice from the officers' alleged disregard for the explanations offered by Peaches and Creecy at the scene and their alleged mistreatment of Creecy during and after his arrest. Accordingly, the Court finds that Creecy has stated a claim for malicious prosecution.

Creecy also asserts a claim for abuse of process. "The essence of the tort of abuse of process is the use of the legal system 'to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'" *Scott*, 101 F.3d at 755 (quoting *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992)). Creecy does not distinguish his abuse of process claim from his malicious prosecution claim in his Complaint, and the parties do not address this claim separately in their briefs. However, it is apparent to the Court that Creecy has not pled an abuse of process claim. "The critical concern in abuse of process cases is whether process was used to accomplish an end unintended by law, and whether the suit was instituted to achieve a result not regularly or legally obtainable." *Morowitz*, 423 A.2d at 198. Creecy has not alleged that the criminal proceedings were filed against him for any improper purpose, such as to pressure him to take some action or not take some action; he merely claims that the criminal charges were unfounded and prosecuted with malice. But the issuance of process with ulterior motive alone does not establish a claim for abuse of process. *See id.* Therefore, the Court shall grant Defendants' motion to dismiss Creecy's abuse of process claim.

C.       *Excessive Force Claims*

Creecy asserts claims for assault and battery and violation of his constitutional rights against Defendants Jackson and Walker based on their alleged use of excessive force while

13

arresting him. Defendants argue that these claims must be dismissed because the facts pled by

Creecy demonstrate that Jackson and Walker used only reasonable force to arrest him and

therefore their actions are privileged. "A police officer has a qualified privilege to use reasonable

force to effect an arrest, provided that the means employed are not in excess of those which the

actor reasonably believes to be necessary." *Evans-Reid v. District of Columbia*, 930 A.2d 930,

937 (D.C. 2007). "[T]he test for qualified privilege in an assault and battery suit is both

objective and subjective: the officer must subjectively believe that he or she used no more force

than necessary, but the officer's judgment is compared to that of a hypothetical reasonable police

officer placed in the same situation." *Scales v. District of Columbia*, 973 A.2d 722, 730 (D.C.

2009). Here, Creecy has alleged that Defendants Jackson and Walker intentionally harmed him

during the arrest, and if true, this would defeat the subjective element of the qualified privilege.

For claims based on violation of the Fourth Amendment, "the question is whether the officers'

actions are 'objectively reasonable' in light of the facts and circumstances confronting them,

without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397

(1989). "An officer will only be held liable if the force used was so excessive that no reasonable

officer could have believed in the lawfulness of his actions." *Rogala v. District of Columbia*,

161 F.3d 44, 54 (D.C. Cir. 1998).

The Court finds that the facts alleged in Creecy's Complaint are sufficient to make out an

excessive force claim. Creecy alleges that Jackson and Walker threw him up against the wall

without warning and twisted his arm so tightly that his shoulder separated and then intentionally

slammed on the brakes so that his body whipped back and forth in the back of the police car en

route to the police station. Based on these facts as alleged in the Complaint and drawing all

inferences in favor of Creecy, a reasonable jury could conclude that this force was excessive. Accordingly, the Court shall deny Defendants' motion to dismiss Creecy's excessive force claims.

### D.      *Negligence Claim Against Defendants Jackson and Walker*

In Count VIII, Creecy asserts a claim for negligence against Defendants Jackson and Walker.  Police officers may be liable for negligence under District of Columbia law where they violate the standard of care that would be exercised by a reasonably prudent police officer. *Scales*, 973 A.2d at 730.  However, where a plaintiff asserts claims for both negligence and assault and battery based on excessive force, the negligence claim "must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care." *Id.* (quoting *Smith v. District of Columbia*, 882 A.2d 778, 792 (D.C. 2005)).  Creecy argues that he has a separate negligence claim based on his allegations that Jackson and Walker failed to properly investigate the situation once they arrived on the scene.[6]  *See* Compl. ¶¶ 14-15, 20.  However, Creecy does not allege that Jackson and Walker had a duty to investigate or explain how the breach of such a duty caused him injury.  *See Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 29 (D.D.C. 1998) ("A claim of negligence requires the plaintiff to plead 'a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach.'") (quoting *District of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C. 1984)).  Although Creecy does allege that Jackson and Walker had a duty to "carry out their

---

[6] Creecy also argues that he has asserted a negligence claim based on Jackson and Walker's alleged handcuffing Creecy too tightly, but this allegation is properly construed as part of his excessive force claims.

duties in a careful, safe, prudent and lawful manner so as to avoid injuries or damages," *see* Compl. ¶ 65, that alleged duty does not encompass a duty to investigate, and the only alleged breach of that duty occurred during the allegedly unlawful arrest and alleged use of excessive force, *see id.* ¶ 66. Therefore, the Court finds that Creecy has failed to state a claim for negligence under D.C. law. Accordingly, the Court shall grant Defendants' motion to dismiss Count VIII.

> E.     *Claim for Intentional Infliction of Emotional Distress*

In Count III, Creecy asserts a claim for intentional infliction of emotional distress. To establish such a claim under D.C. law, a plaintiff must show "extreme and outrageous conduct" on the part of the defendant which intentionally or recklessly causes the plaintiff severe emotional distress. *Baltimore v. District of Columbia*, 10 A.3d 1141, 1155 (D.C. 2011). To qualify as "extreme and outrageous," the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kotsch v. District of Columbia*, 924 A.2d 1040, 1045-46 (D.C. 2007). "Where reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Drejza v. Vaccaro*, 650 A.2d 1308, 1316 (D.C. 1994) (citation and alteration omitted).

Defendants argue that the challenged conduct cannot be considered "extreme and outrageous" because there was clearly probable cause for Creecy's arrest. However, as the Court explained above, Creecy has sufficiently alleged that there was no probable cause for his arrest. In light of the alleged lack of probable cause and alleged intentional acts taken to harm Creecy, it

is for a jury to determine whether Defendants' actions amount to "extreme and outrageous"

conduct.  Accordingly, the Court shall deny Defendants' motion to dismiss Count III.

F.       *Claims Asserted Against the District of Columbia*

Creecy asserts claims against the District of Columbia under both § 1983 and common

law.  "A municipality may be sued under Section 1983 for implementing or executing a policy or

custom that causes the deprivation of an individual's constitutional rights." *Rogala v. District of*

*Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

690-91 (1978)).  In this case, however, Creecy has failed to plead any facts relating to the

existence of a policy or custom by the District of Columbia that is in any way connected to the

alleged deprivation of his constitutional rights.  Creecy identifies only two allegations that could

possibly relate to a municipal policy or custom.  First, Creecy alleges that the District of

Columbia "administers a set of law enforcement policies, rules, practices and customs involving

the arrest, apprehension and detention of citizens, as well as the hiring, training and supervision

of its police officers." Compl. ¶ 4.  Second, Creecy alleges that the District of Columbia "acted

negligently, carelessly and recklessly by failing to properly train, supervise, control, direct and

monitor its employees" and "failed to train Defendants Jackson and Walker on the proper

investigation procedures and on procedures for searching and arresting of individuals they come

into contact with." *Id.* ¶ 55.  These allegations are conclusory and fail to plausibly show that a

municipal policy or custom caused Creecy's constitutional rights to be violated.  Accordingly, the

Court shall grant Defendant's motion to dismiss Creecy's § 1983 claim against the District of

Columbia.

Defendants also argue that Creecy has failed to plead facts sufficient to support his claims

of negligent hiring, training, and supervision in Counts VI and VII.  However, Creecy has alleged that the District of Columbia was negligent in failing to train Defendants Jackson and Walker on the proper procedures for arrests and investigations and that it failed to conduct a proper background check on them prior to hiring them.  *See* Compl. ¶¶ 55-56, 60-61.  The Court is satisfied that Creecy has alleged facts sufficient to state claims for negligence against the District of Columbia.  Accordingly, the Court shall deny Defendants' motion to dismiss Counts VI and VII.

The Court notes that the District of Columbia may also be liable for the intentional torts of its employees acting within the scope of their employment under the theory of *respondeat superior*.  *Wade v. District of Columbia*, 310 A.2d 857 (D.C. 1973) (en banc).

G.    *Claim Based on Warrantless Entry to the Home*

Although the parties do not address this claim in their briefs, the Court notes that Creecy appears to be asserting a claim for a violation of his Fourth Amendment rights based on Jackson's and Walker's alleged warrantless entry into the house in order to arrest him.  *See* Compl. ¶ 27 ("Defendants Jackson and Walker forcefully entered Plaintiff's home without permission and without a warrant.").  This claim is not clearly meritless.  *See Payton v. New York*, 445 U.S. 573, 590 (1980) ("In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.").  Because Defendants do not address this claim in their motion to dismiss, the Court has no basis to dismiss it.

## H.    Creecy's Motion to Amend Complaint

Creecy has filed a [14] Motion for Leave to Amend Complaint, which is opposed by Defendants.  Creecy seeks leave to amend his complaint to add new factual allegations in support of his claims.  Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleadings once as a matter of course within twenty-one days after service or within twenty-one days after service of a responsive pleading or a motion filed under Rule 12(b).  Where, as here, a party seeks to amend its pleadings outside that time period, he may do so only with the opposing party's written consent or the district court's leave.  Fed. R. Civ. P. 15(a)(2).  The decision whether to grant leave to amend a complaint is within the discretion of the district court, but leave "should be freely given unless there is a good reason, such as futility, to the contrary." *Willoughby v. Potomac Elec. Power Co.,* 100 F.3d 999, 1003 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1197 (1997); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'").

Defendants argue that Creecy should not be given leave to amend the Complaint because (1) Creecy failed to comply with Local Civil Rule 7(i), which requires a motion for leave to file an amended pleading to be accompanied by an original of the proposed pleading as amended; and (2) Creecy's proposed Amended Complaint would not survive a motion to dismiss.  Because

Creecy failed to comply with LCvR 7(i), the Court cannot determine whether or not his proposed amendments would be futile. Furthermore, it is unclear from Creecy's motion how he specifically intends to amend his Complaint. Accordingly, the Court shall deny Creecy's motion to amend without prejudice; Creecy may file a new motion for leave to amend that complies with Local Civil Rule 7(i).

## IV. CONCLUSION

For the foregoing reasons, the Court shall grant Defendant Jackson's [22] Motion to Set Aside Default and grant Defendants' [9] Motion to Dismiss with respect to Creecy's § 1983 claim against the District of Columbia in Count I, Creecy's abuse of process claim in Count V, and Creecy's negligence claims against Defendants Jackson and Walker in Count VIII; the Court shall deny the motion to dismiss with respect to Creecy's remaining claims. The Court shall also deny without prejudice Creecy's [14] Motion for Leave to Amend Complaint. The Court shall order the Clerk to reissue the summons for Defendant Walker and order Creecy to serve Walker within a reasonable time. The Court shall also order Creecy to move for the entry of default as to Defendant Killibrew and seek a default judgment, if appropriate. An appropriate Order accompanies this Memorandum Opinion.


Date:   March 31, 2011

                                            _____/s/_____
                                            COLLEEN KOLLAR-KOTELLY
                                            United States District Judge